UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------X

CYNTHIA M. MANZOLILLO,

              *Plaintiff*,           **MEMORANDUM & ORDER**

  - against -            No. 22-cv-3570 (KAM)(AYS)

NATIONSTAR MORTGAGE, LLC d/b/a/
MR. COOPER,

              *Defendant*.

------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

      Plaintiff Cynthia M. Manzolillo ("Plaintiff" or "Manzolillo") commenced this action on June 16, 2022, against Nationstar Mortgage, LLC d/b/a Mr. Cooper ("Defendant" or "Nationstar"), asserting violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 C.F.R. § 1024. Presently before the Court are Defendant's motion for summary judgment (ECF No. 30, "Def. Mot.") and Plaintiff's motion for summary judgment (ECF No. 31, "Pl. Mot."). For the reasons that follow, Defendant's motion for summary judgment is GRANTED, and Plaintiff's motion for summary judgment is DENIED.

## BACKGROUND

      Based on the parties' Local Rule 56.1 Statements, declarations, and exhibits, the Court has construed the facts in

a manner favorable to the non-moving party and finds that the following material facts are not in genuine dispute.

## I.    Factual Background

On January 26, 2009, Plaintiff entered into a $421,400.00 mortgage loan (the "Loan") with Continental Home Loans, Inc. (ECF No. 30-25, "Def. 56.1 Statement," ¶ 1.)  The Loan was secured by a mortgage (the "Mortgage") against her home located at 353 43rd Street, Lindenhurst, NY 11757 (the "Property").  (*Id.*)  The Mortgage was subsequently assigned to Defendant.  (ECF No. 30-16, Blunt Aff. Ex. C; Def. 56.1 Statement ¶ 1.)  The Mortgage stated, in relevant part, that all notices shall be provided by the lender to Plaintiff at the Property address "or any other address [Plaintiff] designates by notice to Lender."  (ECF No. 30-15, Blunt Aff. Ex. B at 10.[1])  Plaintiff admits to defaulting on the Loan by failing to make the July 1, 2012, payment and each payment coming due thereafter.  (Def. 56.1 Statement ¶ 3; ECF No. 30-30, "Pl. 56.1 Counterstatement," ¶ 3.)

In or around August 2013, Plaintiff retained Ralph Fresolone, Esq. ("Fresolone") as her counsel to try to resolve the Loan default.  (Def. 56.1 Statement ¶ 4.)  By letter, Fresolone contacted Defendant on August 16, 2013, to advise of his representation of Plaintiff and inquire about the possibility of

---

[1] All pin citations to the record refer to the page number assigned by the court's CM/ECF system.

a loan modification for Plaintiff.  (*Id.*)  In that same letter, Fresolone demanded that Defendant cease "all further communications" with Plaintiff, and directed that forthwith all communications, correspondence and contact be with Fresolone at his office address, located at 235 Brooksite Drive, Hauppauge, New York 11788 (the "Brooksite Address").  (ECF No. 30-18, Blunt Aff. Ex. E at 3; Def. 56.1 Statement ¶ 4.)

On January 28, 2014, following Plaintiff's default, Defendant commenced a foreclosure action in the Supreme Court of the State of New York, Suffolk County, captioned: *Nationstar Mortg. LLC v. Cynthia Manzolillo, etc., et al.*, Index No. 060540/2014 (the "Foreclosure Action").  (Def. 56.1 Statement ¶ 7.)  Plaintiff was represented by Fresolone in the Foreclosure Action, and Fresolone filed an answer on Plaintiff's behalf on April 10, 2014.  (*Id.;* ECF No. 30-6, Scibetta Decl. Ex. 5.)  At the time the answer was filed, Fresolone's office address was located at the Brooksite Address.  (ECF No. 21 at 4, "Pl. 56.1 Statement" ¶ 5.)  Plaintiff's answer was stricken on the merits, and Judgment of Foreclosure and Sale was entered in favor of Defendant on December 22, 2021.  (Def. 56.1 Statement ¶ 8.)  Defendant then noticed a sale of the Property for June 8, 2022.  (*Id.*)

Plaintiff sought or inquired about loan modifications from Defendant on several occasions.  (*Id.* ¶ 6.)  On or about August 16, 2013, Fresolone inquired about the possibility of a loan

modification for Plaintiff.  (*See* Pl. Mot. at 13; Def. 56.1 Statement ¶ 4.)    Defendant, citing Fresolone's deposition testimony, denies that Fresolone's August 16 inquiry amounted to a loan modification application.  (ECF No. 33, "Def. Opp." at 8.) Despite Fresolone's August 16 inquiry, approximately a year later, on August 7, 2014, Plaintiff spoke with a Nationstar representative and was advised that there was no pending modification application. (*Id.*; ECF No. 30-19, Blunt Aff. Ex. F at 23.)  On August 12, 2014, and August 25, 2014, Plaintiff provided Defendant with certain documents related to her loan modification application.  (*See* Blunt Aff. Ex. F at 23.)    On October 1, 2014, Defendant sent correspondence to Plaintiff at her counsel's Brooksite Address, advising that Plaintiff had been denied for a modification because a reduced payment within program parameters could not be created. (*Id.*; Def. 56.1 Statement ¶ 6.)    In late 2014, Defendant subsequently offered Plaintiff a trial payment modification plan, which Plaintiff declined due to unaffordability.[2]  (ECF No. 32-1, Fresolone Dep. Tr. 28:4-29:10; Pl. Mot. at 13-14.)

---

[2] Despite Plaintiff stating that she "does not admit the trial payment plan for a modification[,]" (Pl. 56.1 Counterstatement ¶ 6), Plaintiff cites no evidence to dispute this fact.  Responses that "do not point to any evidence in the record that may create a genuine issue of material fact[] do not function as denials, and will be deemed admissions of the stated fact." *Risco v. McHugh*, 868 F. Supp. 2d 75, 85 n.2 (S.D.N.Y. 2012) (internal quotations omitted). Because Plaintiff's response does not present evidence showing a genuine dispute, the Court deems the corresponding facts regarding Plaintiff declining a trial payment plan admitted.

Throughout 2015, Plaintiff was further evaluated for potential loan modifications on several occasions. Each application, however, was ultimately denied due to the application being incomplete. (ECF No. 30-13, "Blunt Aff." ¶ 14.) Defendant Nationstar notified Plaintiff by letters to her designated counsel, dated March 21, 2015, April 29, 2015, June 9, 2015, and November 10, 2015, that her loan modification applications are incomplete and therefore denied. (*Id.*; ECF No. 30-21, Blunt Aff. Ex. H.)

In or around September 2016, Fresolone changed his office address to 550 Route 111, Hauppauge, New York 11788 (the "Route 111 Address").[3] (Def. 56.1 Statement ¶ 9.) Fresolone did not write to Defendant regarding the address change and did not file a notice of change of address in the Foreclosure Action. (*Id.*) Despite not filing a notice of change of address in the Foreclosure Action, Fresolone received mail related to the Foreclosure Action at the Route 111 Address from Defendant's foreclosure counsel. (Pl. 56.1 Statement ¶¶ 7, 17.)

Fresolone again changed his office location in or around September 2020 to 732 Smithtown Bypass #A51, Smithtown, New York 11787. (Def. 56.1 Statement ¶ 10.) Fresolone again did not write

---

[3] Plaintiff's assertion that Fresolone moved to the Route 111 Address on or about January 1, 2016, conflicts with Plaintiff's own citation to the deposition transcript of Ralph Fresolone. As stated in the transcript, Fresolone testified to moving to the Route 111 Address in September of 2016. (*Compare* ECF No. 21, Pl. 56.1 Statement ¶ 6 *with* ECF No. 32-2, Fresolone Dep. Tr. 39:10-18.)

to Defendant regarding the change in address and did not file a notice of change of address in the Foreclosure Action. (*Id.*) For both address changes, Fresolone testified that he generally left the administrative details to his staff. (*Id.*)

Plaintiff was aware that Fresolone had changed his office addresses but did not contact Defendant to request that communications on the Loan be sent anywhere other than the previously designated Brooksite Address. (*Id.* ¶ 11.) Plaintiff claims to have stopped using Fresolone as her primary counsel in the Foreclosure Action in or around 2018, instead retaining Jeffrey Herzberg, Esq. ("Herzberg"). (*Id.* ¶ 12.) The Foreclosure Action docket, however, reflects that neither Fresolone nor Herzberg ever filed a Consent to Change Attorney memorializing the change in counsel.[4] (*Id.*)

On or about December 17, 2021, Plaintiff phoned Defendant to inquire about the Loan and seek information regarding applying for a loan modification. (*Id.* ¶ 13.) That same date, Plaintiff completed an application (the "December 2021 Modification Application") and sent it to Defendant. (*Id.*) Defendant received

---

[4] Plaintiff asserts, in opposition, that Herzberg's name appears on Fresolone's letterhead. Even construing the facts in favor of the non-moving Plaintiff, it is undisputed that neither Plaintiff nor Plaintiff's attorneys filed a Consent to Change Attorney in the Foreclosure Action. Thus, Plaintiff is deemed to have admitted to the statements in paragraph 12 of Defendant's 56.1 Statement. *See Costello v. N.Y. State Nurse Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (disregarding plaintiff's responses where plaintiff failed to specifically dispute defendant's statements).

the December 2021 Modification Application on or about December 20, 2021. (*Id.*)

After reviewing the December 2021 Modification Application, Defendant sent Plaintiff a letter on December 23, 2021, advising that the December 2021 Modification Application was incomplete and identifying additional documentation needed for the review to continue. (*Id.* ¶ 14.) This letter was sent to the Brooksite Address. (*Id.*) As Fresolone's office was no longer located at the Brooksite Address, Plaintiff asserts that she did not see this letter. (Pl. 56.1 Counterstatement ¶ 14.) There is no evidence in the record that Defendant's correspondence was returned.

Plaintiff then failed to submit the missing documentation requested in Defendant's December 23, 2021, letter. (Def. 56.1 Statement ¶ 15.) On December 28, 2021, Defendant called Fresolone at his office line, but did not receive a response. (*Id.*; Blunt Aff. Ex. F at 104.) Thereafter, on January 26, 2022, Defendant sent Plaintiff another letter advising that it could not evaluate her request for a loan modification because Plaintiff had failed to provide the requested documentation in the timeframe provided. (Def. 56.1 Statement ¶ 15.) Defendant noted, in its January 26 letter, that it would remain willing to review any future request should a "new, complete application" be submitted. (*Id.*) Plaintiff denies seeing Defendant's January 26 letter. (Pl. 56.1 Counterstatement ¶ 15.)

On June 1, 2022, prior to the sale of the Property, Plaintiff filed an Order to Show Cause and an Affirmation of Jeffrey Herzberg ("Herzberg Affirmation") seeking a stay of sale in the Foreclosure Action. (Def. 56.1 Statement ¶ 16; ECF No. 30-11, Scibetta Decl. Ex. 10.) Plaintiff argued that Defendant had violated certain regulations under RESPA in failing to review Plaintiff's December 2021 Modification Application, which Plaintiff argued warranted a stay of the scheduled sale of the Property. (Def. 56.1 Statement ¶ 16; Scibetta Decl. Ex. 10.) Plaintiff cited RESPA provisions at 12 C.F.R. §§ 1024.35 and 1024.41. (Def. 56.1 Statement ¶ 16; Scibetta Decl. Ex. 10 at 6-10.) The court in the Foreclosure Action stated that Plaintiff's arguments were an "insufficient reason for stop of sale," declared that the "[j]udgment is final[,]" and declined to sign Plaintiff's proposed order to show cause. (Def. 56.1 Statement ¶ 16; Scibetta Decl. Ex. 10 at 2-3.) It is undisputed that Plaintiff did not appeal that decision in the state Foreclosure Action. (ECF No. 30-9, Scibetta Decl. Ex. 8.)

## II.  Procedural Background

On June 16, 2022, Plaintiff filed the instant complaint (ECF No. 1, Complaint, "Compl."), seeking judgment against Defendant for the appraised value of the Property at the time of filing (i.e., $530,000) and $2,000.00 in punitive damages. (Compl. at 5.) Plaintiff is seeking relief based upon Defendant's alleged

failure to comply with certain RESPA provisions at 12 C.F.R. § 1024.41(b) and § 1024.41(g). Section 1024.41(b)(2)(i)(B) provides, in relevant part, that:

> If a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall notify the borrower in writing within 5 days . . . after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete.

12 C.F.R. § 1024.41(b)(2)(i)(B). Section 1024.41(g) provides, in relevant part, that:

> If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale[.]

12 C.F.R. § 1024.41(g). Plaintiff alleges that, following receipt of her December 2021 Modification Application, Defendant purportedly failed to respond to her in a timely fashion in violation of 12 C.F.R. § 1024.41(b), and thereafter caused the Property to be sold in violation of 12 C.F.R. § 1024.41(g). Defendant answered the Complaint on August 3, 2022, raising defenses including, *inter alia*, that Plaintiff was barred by the doctrine of *res judicata*, and that Plaintiff fails to allege that she suffered actual damages in connection with her claims. (ECF No. 8, "Answer" at 4-5.)

On May 18, 2023, following the close of discovery, Defendant moved for a pre-motion conference to discuss its anticipated motion for summary judgment, attaching a Local Rule 56.1 Statement of Material Facts.  (*See* ECF No. 20.)  Rather than comply with the Court's motion practices and respond to Defendant's letter motion for a pre-motion conference and accompanying 56.1 statement, Plaintiff filed a letter seeking a pre-motion conference for her anticipated summary judgment motion and her own 56.1 statement. (*See* ECF No. 21.)  On January 10, 2024, the Court held a pre-motion conference to discuss the parties' respective motions for summary judgment, and ordered the briefing schedule for both motions to proceed in tandem.  (*See* Minute Entry dated January 10, 2024.)  On March 25, 2024, both motions for summary judgment were filed with the Court.  (*See generally* ECF Nos. 30, 31, 32, 33.) Plaintiff, however, did not file a reply brief in further support of her motion for summary judgment or a 56.1 Reply Statement in connection with her motion.  The Court now considers the parties' fully submitted motions for summary judgment.

## **LEGAL STANDARD**

Summary judgment shall be granted to a movant who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Rojas*

*v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

When bringing a motion for summary judgment, the movant carries the burden of demonstrating the absence of any disputed issues of material fact and entitlement to judgment as a matter of law. *Rojas*, 660 F.3d at 104. In deciding a summary judgment motion, the court "must resolve all ambiguities and draw all reasonable inferences against the moving party." *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A moving party may indicate the absence of a factual dispute by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Once the moving party has met its burden, the nonmoving party "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Finally, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The summary judgment standard applies to cross-motions for summary judgment. *See Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). When, as here, there are cross-motions for summary judgment, the Court alternately draws all factual inferences in favor of one party and against the party whose motion is under consideration. *Trident Intern. Ltd. v. Am. Steamship Owners Mut. Prot. and Indem. Assn, Inc.*, No. 5-cv-3947(PAC), 2008 WL 2909389, at *2 (S.D.N.Y. 2008) (citing *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005) (quotations and citations omitted)). Additionally, where the motion and cross motion seek a determination of the same issue, the Court may address both motions together. *See Chartis Seguros Mex., S.A. de C.V. v. HLI Rail & Rigging, LLC*, 3 F. Supp. 3d 171, 179 (S.D.N.Y. 2014).

## DISCUSSION

### I.  Motions for Summary Judgment

The Court first addresses Defendant's motion for summary judgment. Defendant argues that (1) Plaintiff's claims are barred by *res judicata*, (2) Plaintiff fails to allege or establish any recoverable RESPA damages, and (3) there is no dispute of material

fact precluding summary judgment.  For the reasons herein, the Court agrees with Defendant on its first and second argument, and therefore does not reach the third.  Due to the disposition of Plaintiff's RESPA claims on Defendant's motion for summary judgment, Plaintiff's cross-motion for summary judgment on her RESPA claims is denied.

**A.  Plaintiff's Claims are Barred by *Res Judicata***

The doctrine of *res judicata* provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). For a party to succeed in proving the affirmative defense of *res judicata*, the party "must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (citing *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)).  Under New York's approach to *res judicata*, "a party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter." *In re Hunter*, 827 N.E.2d 269, 275 (N.Y. 2005).  Whether a claim that was not raised in the previous action could have been raised therein

13

"depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992) (internal quotations and citations omitted); *In re Hunter*, 827 N.E.2d at 274.  To determine whether two actions arise from the same transaction or claim, a court considers "whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001).  The doctrine of *res judicata* "also applies to defenses that could have been litigated, including defenses to a foreclosure." *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 421 (S.D.N.Y. 2008) (quoting *Beckford v. Citibank N.A.*, No. 00-cv-205(DLC), 2000 WL 1585684, at *4 (S.D.N.Y. Oct. 24, 2000)).

Defendant has met the requirements for *res judicata*.  First, "[a] judgment of foreclosure entered against [Plaintiff] is an adjudication on the merits, which prevents reconsideration of any claim that is based on the same facts as the foreclosure judgment and would disturb [Defendant's] ability to enforce rights provided pursuant to the mortgage and the note securing [the subject] property." *Done v. Wells Fargo Bank, N.A.*, No. 08-cv-3040(JFB),

14

2009 WL 2959619, at *4 (E.D.N.Y. Sep. 14, 2009). Plaintiff does not dispute that a judgment of foreclosure and sale was entered against her in the Foreclosure Action. (*See* ECF No. 30-8, Scibetta Decl. Ex. 7; Def. 56.1 Statement ¶ 8; Pl. 56.1 Counterstatement ¶ 8.) Second, the Foreclosure Action involved the same parties as in the instant action. Specifically, Defendant Nationstar filed the Foreclosure Action seeking and securing a judgment of foreclosure and sale against Plaintiff Manzolillo. (Def. 56.1 Statement ¶ 7.) Third, the RESPA claims asserted in this action were already raised in the Foreclosure Action when Plaintiff moved to stay the sale of the Property. In the Herzberg Affirmation in support of the stay, Plaintiff states that "Nationstar and/or its serving agent has never responded to Manzolillo's application for a loan modification" and "[t]he application was submitted to Nationstar on or about December 17, 2021[.]" (Scibetta Decl. Ex. 10 at 6-7.) Plaintiff then argues that, in purportedly failing to respond to Plaintiff's loan modification application prior to the sale of the Property, Defendant violated the RESPA regulations, 12 C.F.R. § 1024.35(b) and § 1024.41(g). (*Id.* at 7-10.) Judge Whelan of the Suffolk County Supreme Court denied Plaintiff's request for a stay, noting that Plaintiff's arguments were an "insufficient reason for stop of sale" and "[j]udgment is final[.]" (*Id.* at 3.) To consider, or find for Plaintiff now on, her RESPA claims would essentially permit Plaintiff to re-litigate RESPA

15

claims that she had already raised in state court and lost. Thus, Plaintiff is barred by *res judicata* from relitigating her RESPA claims in this Court.

**B.  Plaintiff Has Not Established Entitlement to Recoverable Damages**

Even if *res judicata* did not bar Plaintiff's claims, Defendant argues, and the Court agrees, that Plaintiff has failed to show entitlement to actual damages arising from Defendant's alleged RESPA violation.

Plaintiff's RESPA claims can "only be brought pursuant to [12 U.S.C. § 2605]." *See* 12 C.F.R. § 1024.41(a) ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. § 2605(f)"). To assert a claim under § 2605, Plaintiff must adequately allege a plausible entitlement to either: (1) "actual damages" to the borrower as a result of the failure to comply with § 2605; or (2) statutory damages "in the case of a pattern or practice of noncompliance with the requirements" of § 2605. 12 U.S.C. § 2605(f). Here, Plaintiff seeks $530,000 in actual damages.

To recover actual damages, Plaintiff "must allege injury and resulting damages that are proximately caused by the loan servicer's failure to adhere to its obligations under § 2605[.]" *Gobarty v. Wells Fargo Bank, N.A.*, No. 10-cv-3291(NGG)(SMG), 2014 WL 4742509, at *5 (E.D.N.Y. Sept. 23, 2014). *See also Corazzini*

16

*v. Litton Loan Servicing LLP*, No. 09-cv-199(MAD), 2010 WL 6787231, at *12 (N.D.N.Y. June 15, 2010) ("[T]he courts have consistently dismissed complaints under RESPA if they do not allege actual damages or state merely that in a conclusory fashion the defendant caused damages to the plaintiff.")  "Importantly, the loss alleged must be related to the RESPA violation itself." *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-cv-3291(NGG), 2012 WL 1372260, at *5 (E.D.N.Y. Apr. 18, 2012) (internal citation omitted).  To survive summary judgment, Plaintiff "must show actual damages caused by a servicer's [RESPA violation]." *Roth v. CitiMortgage Inc.*, No. 12-cv-2446(SJF)(WDW), 2013 WL 5205775, at *8 (E.D.N.Y. Sept. 11, 2013) (citing *Stein v. Nat'l City Bank*, No. 9-cv-1995(MJD)(JJG), 2010 WL 5559528, at *5 (D. Minn. Nov. 22, 2010)).  In other words, Plaintiff must specifically allege and show how Defendant's purported RESPA violations – rather than Plaintiff's underlying failure to pay her mortgage and the subsequent foreclosure sale – gave rise to her damages. *See, e.g.*, *Ehrenfeld v. Wells Fargo, N.A.*, No. 19-cv-2314(BMC), 2019 WL 4933631, at *5 (E.D.N.Y. Oct. 7, 2019) (finding no proximate cause where plaintiff's damages arose from her underlying failure to pay her mortgage and the potential foreclosure sale rather than the alleged RESPA violations); *Roth*, 2013 WL 5205775, at *8 (finding no proximate cause between plaintiff's purported emotional distress from the possible loss of her home and defendant's RESPA violations).  Not

17

only does Plaintiff fail to allege facts establishing that Defendant's purported RESPA violations caused her damages, she also provides no evidentiary support.

Plaintiff has not shown proximate cause between her actual damages and Defendant's purported RESPA violations. First, Plaintiff's Complaint alleges in a conclusory manner that "Nationstar's failure to respond to [Plaintiff's] loss mitigation application in a timely basis" caused a foreclosure sale in violation of RESPA. (*See* Compl. ¶ 14.) Second, Plaintiff's opposition to Defendant's summary judgment motion does not meaningfully address Defendant's arguments regarding the lack of proximate cause between the alleged RESPA violation and her claimed damages. Plaintiff, in opposition, merely asserts that there is a "causal link" between Defendant's alleged failure to respond to Plaintiff's December 2021 Modification Application and the subsequent "unlawful loss of [Plaintiff's] real property/home worth approximately $530,000."[5] (ECF No. 31-1, "Pl. Opp." at 11.)

---

[5] Defendant's motion invokes the doctrine of *res judicata*. To the extent Plaintiff cites the *Rooker-Feldman* doctrine in challenging the foreclosure and sale of the Property as unlawful, Plaintiff's RESPA claims would be barred from consideration by this Court under the *Rooker-Feldman* doctrine. *See Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) (finding *Rooker-Feldman* to bar federal court review of RESPA claims inviting review and rejection of foreclosure judgment).

Though an independent RESPA claim for damages may not run afoul of *Rooker-Feldman*, *Rooker-Feldman* may nonetheless bar determination of an independent RESPA claim if it conflicts with the state court's order in the foreclosure proceeding. *Compare Naylor v. Wells Fargo Home Mortg., Inc.*, No. 15-cv-116(RJC), 2016 WL 55292, at *5 (W.D.N.C. Jan. 5, 2016) (permitting review of RESPA claims where "[t]he state-court foreclosure proceedings have no bearing on the resolution of these federal claims, and the imposition of damages would

This assertion fails to specifically allege, much less establish with admissible evidence, how Plaintiff's damages arose from Defendant's alleged RESPA violations, rather than Plaintiff's underlying failure to pay her mortgage.

The undisputed facts before the Court fail to establish proximate cause. As Plaintiff concedes, Plaintiff's default on the Loan ultimately led to Defendant's commencement of foreclosure proceedings and, ultimately, the foreclosure judgment and sale. (Def. 56.1 Statement ¶ 3; Pl. 56.1 Counterstatement ¶ 3.) Furthermore, Plaintiff claims to have been in the process of trying to obtain a loan modification since 2013. (Pl. Mot. at 13.) However, Plaintiff never obtained a workable loan modification despite multiple efforts of trying with incomplete applications, and at least one completed loan modification application in October 2014. (Blunt Aff. ¶¶ 12-14; ECF No. 30-20, Blunt Aff. Ex. G; ECF No. 30-21, Blunt Aff. Ex. H.) In late 2014, Plaintiff was offered a loan modification, but Plaintiff ultimately rejected the modification due to its unaffordability. (Pl. Mot. at 13-14.) Plaintiff then further attempted, on several instances in 2015, to obtain a loan modification. (Blunt Aff. ¶ 14.) On March 21, 2015,

---

not impair Defendants' rights under the foreclosure judgment") *with Dunn v. Deutsche Bank Nat. Trust*, No. 15-cv-00809(DNH)(TWD), 2015 WL 5638232, at *5 (N.D.N.Y. July 10, 2015) (finding that "although Plaintiff's claims are framed as violations of TILA and RESPA requirements, those claims are inextricably intertwined with Plaintiff's claim that he was injured by the state court foreclosure judgment depriving him of title to his property"), *adopted by* 2015 WL 5650182 (N.D.N.Y. Sept. 24, 2015).

April 29, 2015, June 9, 2015, and November 10, 2015, Defendant sent letters to Plaintiff notifying her that her various loan modification applications remained incomplete and were therefore denied. (*Id.*; Blunt Aff. Ex. H.)    Defendant submits, and Plaintiff does not dispute, that the December 2021 Modification Application was an incomplete loss mitigation application as well. (Def. 56.1 Statement ¶ 14; Blunt Aff. ¶¶ 15-17.)

By its plain terms, 12 C.F.R. § 1024.41(g) only halts a foreclosure sale if a borrower has presented a completed loss mitigation application.    Thus, the undisputed facts fail to show a causal connection between Defendant's alleged RESPA violation and Plaintiff's actual damages, and Plaintiff's claim may be and is dismissed on this separate ground.

**C.    The Parties' Remaining Arguments**

In cross moving for summary judgment, Plaintiff, without citing to admissible evidence, speculates that Defendant should have known that its correspondence regarding Plaintiff's incomplete December 2021 Modification Application was not delivered to Plaintiff. (*See* Pl. Mot. at 18.)    Plaintiff does not address, however, Defendant's assertions that (1) Fresolone specifically directed all correspondence to be sent to his office at the Brooksite Address, (2) Plaintiff and Fresolone failed to formally notify Defendant of any address changes, (3) prior to Plaintiff's December 2021 Modification Application, Plaintiff had

20

attempted but failed to obtain a loan modification on various instances because the modification papers were incomplete, and (4) Defendant had timely sent correspondence in response to Plaintiff's December 2021 Modification Application. (Def. Opp. at 4-5.) Thus, Plaintiff has not demonstrated her entitlement to summary judgment on her RESPA claims. *See* Fed. R. Civ. P. 56(a).

Plaintiff's cross-motion also asserts anticipatory arguments in defense of her standing to sue and her entitlement to relief despite Defendant's obligations under RESPA to consider only one, complete loss mitigation application. (Pl. Mot. at 8-10, 11-13.) Defendant makes neither standing nor a "one-application" argument in its motion for summary judgment.

Because Plaintiff's RESPA claims are barred by *res judicata*, or alternatively, fail to allege or establish actual damages in connection with Defendant's alleged RESPA violations, Plaintiff's cross-motion for summary judgment on her RESPA claims is denied. *See Quattrone v. Erie 2 Chautauqua-Cattaraugus Bd. of Coop. Educ. Servs.*, No. 19-cv-1329 (EAW), 2021 WL 4295418, at *5 (W.D.N.Y. Sept. 21, 2021) (granting summary judgment on grounds of *res judicata* and denying plaintiff's cross-motion for summary judgment).

## CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED and Plaintiff's claims are dismissed with prejudice. Plaintiff's

cross-motion for summary judgment is DENIED.  The Clerk of Court

is respectfully directed to enter judgment in favor of Defendant

and close this case.

**So ordered.**

Dated:     February 6, 2025
           Brooklyn, New York     **Kiyo A. Matsumoto**
                                   United States District Judge
                                   Eastern District of New York